


FILED

Jul 31 2025, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Indiana Supreme Court

Supreme Court Case No. 25S-DI-49

## In the Matter of
## Christopher Phillips,
*Respondent.*

---

Decided: July 31, 2025

Attorney Discipline Action

---

### Per Curiam Opinion

Chief Justice Rush and Justices Massa, Slaughter, Goff, and Molter concur.

**Per curiam.**

We find that Respondent, Christopher Phillips, engaged in attorney misconduct by, among other things, charging unreasonable fees in estate matters and mismanaging his attorney trust account. For this misconduct, we agree with the parties that Respondent should be suspended from the practice of law for 180 days, with 120 days actively served and the balance stayed subject to successful completion of at least three years of probation with monitoring by a certified public accountant.

Pursuant to Indiana Admission and Discipline Rule 23(12.1)(b), the Indiana Supreme Court Disciplinary Commission and Respondent have submitted for approval a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating agreed facts and proposed discipline. Respondent's 2011 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* Ind. Const. art. 7, § 4. The Court approves the agreement and proposed discipline.

# Stipulated Facts

**Count 1.** A decedent's grandson ("Client 1") hired Respondent to assist with estate administration. They did not execute a written fee agreement. In July 2022, Respondent petitioned to open a supervised estate and to appoint a personal representative, and he instructed Client 1 to deposit all estate funds into Respondent's trust account. In the ensuing months, Respondent sought and received the court's approval to sell land and a house comprising most of the estate's value. Respondent later made a partial distribution of estate funds to the heirs, but he failed to obtain the required approval from the court. Meanwhile, after a claim against the estate for funeral expenses went unpaid for over a year, the funeral home filed a civil lawsuit against Client 1. Respondent paid the amount owing from his personal bank account, and the civil matter was dismissed in May 2024.

In October 2023, Respondent sent Client 1 a revised "Schedule of Disbursement" listing the total value of the estate as approximately $1.5 million and charging over $100,000 as his legal fee, based on over 200

hours of purported work. Respondent also told Client 1 he would be retaining approximately $20,000 for payment on an unrelated legal matter Respondent conducted for Client 1. And despite the estate being supervised, Respondent wrote three checks to himself for attorney fees totaling $75,375.

Respondent withdrew from the supervised estate case in February 2024, about one year after the land and house had been sold. Around the same time, Client 1 hired alternate counsel to sue Respondent for the attorney fees. Respondent settled that dispute before a suit was filed.

**Count 2.** A decedent's wife ("Client 2") hired Respondent to assist with the decedent's estate ("Ricki Estate"). They did not discuss or execute a fee agreement. In November 2021 Respondent petitioned to open a supervised administration of the Ricki Estate and deposited all estate funds into his trust account. Respondent took no action on the Ricki Estate for the next two years.

Before his death, the decedent was an heir and personal representative for his aunt's estate ("Richardson Estate"). From November 2021 through May 2022, the Ricki Estate received $640,791.16 from the Richardson Estate. Respondent deposited these proceeds into his trust account. And despite the Ricki Estate being supervised, Respondent wrote three checks to himself totaling $65,000 in attorney fees.

In November 2023, Respondent sent Client 2 closing documents for the Ricki Estate. Those documents significantly understated the amounts received by the Ricki Estate and charged attorney fees of $500 per hour for over 100 hours of purported work. When Client 2 confronted Respondent, he stated his receipt of funds from the Richardson Estate constituted a "separate file" from the Ricki Estate, that his fee was equal to 40% of the total proceeds he collected, and that the 40% fee was fixed by statute. This latter assertion was false, and neither Client 2 nor anyone else had agreed to pay Respondent 40% of the Richardson Estate proceeds.

Respondent distributed $335,000 to Client 2 for the Ricki Estate and withdrew from the supervised estate case. Shortly thereafter, Client 2 sued

Respondent in her capacity as the Ricki Estate's personal representative. That suit was settled in October 2024.

**Count 3.** Between 2021 and 2024, Respondent wrote multiple checks from his trust account to himself or his law office without specifying the basis for the check. Other checks did not specify the legal matter for which they were associated. During the Commission's investigation, Respondent did not provide any details beyond the information on the face of the checks or in the bank statements. Respondent, through counsel, later connected each check to particular client matters "to the best of [Respondent's] recollection."

# Discussion and Discipline

The parties agree that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.3: Failing to act with reasonable diligence and promptness.

1.5(a): Charging an unreasonable fee.

1.5(b): Failing to communicate the basis or rate of the fee for which a client will be responsible before or within a reasonable time after commencing the representation.

1.15(a): Failing to maintain and preserve complete records of client trust account funds.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

The parties further agree that Respondent's failure to create or keep required trust account records violated Indiana Admission and Discipline Rule 23(29)(a).

Respondent's misconduct was serious in numerous respects. He charged grossly disproportionate fees in both estate matters, did not adequately communicate with his clients regarding the basis for the fees, and lied to Client 2 when asked to explain the additional 40% he skimmed from the Richardson Estate. Respondent's lack of diligence in both cases

compounded the unreasonableness of the fees he charged. And throughout all of this, his shoddy bookkeeping left him unable to properly account for disbursements made from his attorney trust account. Respondent's dishonesty and selfish motives, the duration of his misconduct, and the multiple people harmed by his misconduct, are all aggravating factors.

But several mitigating factors also inform our consideration of an appropriate sanction. Respondent has no prior discipline; he has completed the Indiana Continuing Legal Education Forum's Trust Account School during the pendency of these disciplinary proceedings; and perhaps most importantly, he has taken substantial steps to make his aggrieved clients whole. Specifically, in Count 1 he paid the outstanding funeral home debt with his own funds, repaid $100,000 to Client 1, and signed his personal vehicle—valued at approximately $85,000—over to Client 1; and Respondent similarly settled Client 2's lawsuit against him.[1]

The parties point us to *Matter of Keckley*, 254 N.E.3d 1062 (Ind. 2025), in which the attorney took similar remediative steps on behalf of a decedent's heirs in the wake of dishonest misconduct. We approved an agreed 120-day suspension in *Keckley*, and we conclude the same period of active suspension is appropriate here. Further, we conclude the parties' agreed probationary terms are warranted to address Respondent's trust account mismanagement and guard against a recurrence.

# Conclusion

The Court concludes that Respondent violated Professional Conduct Rules 1.3, 1.5(a), 1.5(b), 1.15(a), and 8.4(c), as well as Admission and Discipline Rule 23(29)(a). For Respondent's professional misconduct, the Court **suspends Respondent from the practice of law for a period of 180 days, beginning September 11, 2025, with 120 days actively served and the remainder stayed subject to completion of at least three years of**

---

[1] The parties' conditional agreement does not disclose the terms of this settlement.

**probation.** The Court incorporates by reference the terms and conditions of probation set forth in the parties' Conditional Agreement, which include among other things:

(1) Respondent's probation shall include trust account monitoring by a CPA.

(2) Respondent's choice of CPA shall be subject to the Commission's consent, and the Commission shall have the absolute right to revoke that consent.

(3) The CPA shall report all findings quarterly to the Commission. At a minimum, each report shall contain trust fund receipt and disbursement journals, client ledgers, schedules of client trust funds, reconciliation reports, and copies of trust account bank statements. Each report shall also contain the CPA's evaluation of Respondent's trust account management and procedures.

(4) If Respondent violates the terms of his probation, the stay of his suspension may be vacated and the balance of the stayed suspension may be actively served without automatic reinstatement.

Notwithstanding the expiration of the minimum term of probation set forth above, Respondent's probation shall remain in effect until it is terminated pursuant to a petition to terminate probation filed under Admission and Discipline Rule 23(16).

The costs of this proceeding are assessed against Respondent. Pursuant to the parties' stipulation, the Court hereby orders Respondent to pay $259.64 by check made payable and transmitted to the Clerk of the Indiana Supreme Court. Upon receipt, the Clerk is directed to disburse those funds as follows: (1) $9.64, payable to the Commission as reimbursement for investigative expenses incurred; and (2) $250.00, payable to the Clerk for court costs. The expenses of the hearing officer will be submitted separately.

With the acceptance of this agreement, the hearing officer appointed in this case is discharged with the Court's appreciation.

Rush, C.J., and Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEY FOR RESPONDENT
James J. Bell
Hoover Hull Turner LLP
Indianapolis, Indiana

ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Adrienne L. Meiring, Executive Director
Stephanie Bibbs, Deputy Director of Litigation
Victoria Thomas, Staff Attorney
Indianapolis, Indiana